IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Jonda M. Evans, ) | |
| ) | Civil Action No. 8:05-47-MBS-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB").

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff, who was born March 15, 1945, was 55 years old on December 31, 2000, the date she was last insured under the Act. (Tr. 53.) She completed the twelfth grade and has past relevant work as an administrative assistant and bank teller. (Tr. 70, 566.)

The plaintiff applied for disability insurance benefits (DIB) on November 21, 2000 (Tr. 53-55), under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-433. She

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

claimed she had been disabled since January 10, 1998, due to rheumatoid arthritis and osteoarthritis. (Tr. 53, 64.) Her applications were denied initially and upon reconsideration. (Tr. 35-41, 43-45.) Following a hearing on March 10, 2003 (Tr. 538-67), an administrative law judge (ALJ) found, in a decision dated July 3, 2003, that the plaintiff was not disabled because as of December 31, 2000, the date she was last insured under the Act, she retained the residual functional capacity to perform her past relevant light work as a bank teller and administrative assistant. (Tr. 28.) The Appeals Council's denial of the plaintiff's request for review of the ALJ's decision (Tr. 5-7) made it the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2005).

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. §404.1520.  If an individual is found not disabled at any step,

further inquiry is unnecessary.  *See* 20 C.F.R. §404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  Social Security Ruling ("SSR") 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to find that she meets the 14.09 Listing requirements; (2) rejecting the opinion of Dr. Walter Bonner, the plaintiff's treating physician; and (3) assessing the plaintiff's residual functional capacity. The Court need only address the first assignment of error.

The plaintiff contends that the ALJ erred in concluding that the plaintiff's rheumatiod arthritis did not meet the requirements of Listing 14.09. Listing 14.09A requires the following:

> History of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross manipulation effectively, as defined in 14.00B6b and1.00B6b and B2c

20 C.F.R. pt. 404, subpt. P, app. 1. Listing 1.00B6b defines "inability to ambulate effectively":

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance

4

> to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1. Listing 1.00B6c defines "inability to perform fine and gross movements effectively":

> What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. pt. 404, subpt. P, app. 1. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original).

The defendant does not deny that the plaintiff has a "history of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints," *see* 20 C.F.R. pt. 404, subpt. P, app. 1, and the record is profuse with evidence to that end. Instead, the defendant contends that there is no evidence in the record that the plaintiff's rheumatoid arthritis resulted in an inability to

ambulate effectively or perform fine and gross manipulation effectively. The Court disagrees. There are a variety of places in the record that concern the plaintiff's difficulty in ambulation and motor skills as a result of her arthritis. (*See, e.g.*, Tr. 180, 203, 236, 248, 252, 269, 283-85, 387-88, 560-61.)

The Court recites a few notable examples. First, the plaintiff has been prescribed a walker. (Tr. 252, 267.) Listing 1.00B6b, quoted in full above, expressly identifies this type of indicia as reflective of an "inability to ambulate effectively." Second, Dr. Austin Gray remarked that the plaintiff "has difficulty with movements, particularly in the morning and claims in afternoon she is substantially better. In the morning she needs help in the shower from her husband. Able to do some minor chores around the house and occasionally needs assistance, such as lifting dishes from the dishwasher due to the WT of the plates causing pain in her hands." (Tr. 284-85.) Finally, physical therapy notes reflect that the plaintiff's coordination and fine motor skills are limited by her arthritis and that her hand grip strength is below average. (Tr. 252.)

In response, the defendant ably points to other places in the record that suggest the plaintiff, in fact, does not meet the listing. (See, e.g., Tr. 239, 284, 383, 387, 389-93.) Unfortunately, the ALJ analyzed none of the relevant evidence, on either side, in making a determination that the plaintiff's impairments, although severe, were "not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 27.) In fact, there is no analysis whatsoever, merely a conclusion. *See id.* It is not the Court's province to balance the evidence but only to determine whether the ALJ's decisions are aptly supported. In this instance, it is impossible to tell.

As outlined above, the ALJ is required to proceed sequentially through a five-step inquiry as provided by 20 C.F.R. §404.1520. *See Burch v. Apfel*, 9 Fed. Appx. 255, 257 (4th Cir. May 29, 2001); *Kennedy v. Heckler*, 739 F.2d 168, 171 (4th Cir. 1984). At the third step in the inquiry, after a finding that the claimant suffers from a severe impairment, the

ALJ must determine whether that impairment meets or equals the medical criteria found in the Listing of Impairments in Appendix 1.  *See* 20 C.F.R. §404.1520.  Critically, "if it does, a finding of disability without consideration of vocational factors is mandated."  See *Kennedy*, 739 F.2d at 171.

It is not enough for the ALJ to proceed in cursory fashion through any portion of the sequential inquiry.  *See Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986).  The ALJ is required "to include in the text of [his] decision a statement of the reasons for that decision." *Id*.  The decision of the ALJ, in this case, "fails to explain the reasons for the determination that [the plaintiff's] arthritis did not meet or equal a listed impairment."  *Id*.  The decision is simply devoid of any explanation regarding the ALJ's determination on this issue and contains only the single conclusory determination that her impairments do not meet the listing.

Cook prescribes the following evaluation:  "The ALJ should have identified the relevant listed impairments.  He should then have compared each of the listed criteria to the evidence of Cook's symptoms."  *Id*. at 1173.  Without such an explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination."  *Id.*  On remand, the ALJ should perform this inquiry as detailed.

To the extent the ALJ feels that the record is not adequately developed as to the effect of the plaintiff's arthritis on her mobility and motor skills, it is his "duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record."  *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir.1981); *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir.1980).  The ALJ may not make an unfavorable determination at step three simply because the "evidence is inadequate."  *Cook*, 783 F.2d at 1173.

As to the plaintiff's other two assignments of error, the Court considers it improvident to make a determination as to whether substantial evidence supports the ALJ's determinations regarding Dr. Bonner or the plaintiff's residual functional capacity.  *See*

*Cook*, 783 F.2d at 1174 ("Due to the inadequate explanation of the ALJ's findings with regard to Cook's arthritis, the insufficient development of the evidence relating to arthritis . . . we find it impossible to conclude that there is substantial evidence to support the Secretary's determination that Cook is not disabled.") After properly performing the above described analysis, it may be unnecessary to consider the plaintiff's residual functional capacity and the opinion of Dr. Bonner.

## CONCLUSION AND RECOMMENDATION

Therefore, it is recommended that the Commissioner's decision be reversed, with a remand of the cause to the Commissioner for further proceedings as set forth above. IT IS SO RECOMMENDED.

s/ Bruce H. Hendricks<br>
United States Magistrate Judge

February 17, 2006
Greenville, South Carolina